

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**COURTNEY FLOYD GREGORY,**

    **Petitioner,**

v.                      **CRIMINAL ACTION NO. 4:96-cr-22(01)**

**UNITED STATES OF AMERICA,**

    **Respondent.**

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Petitioner Courtney Floyd Gregory's ("Petitioner") *pro se* Reinstated

Motion to Reduce Sentence Pursuant to the Formerly Incarcerated Reenter Society Transformed

Safely Transitioning Every Person Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018) ("FIRST

STEP Act"). Pet'r's Reinstated Mot. Reduce Sentence FIRST STEP Act, ECF No. 473 ("Pet'r's

Mot."). For the reasons stated herein, Petitioner's Motion is **GRANTED**.

### I.    FACTUAL AND PROCEDURAL HISTORY

On April 29, 1996, Petitioner was named alongside three co-defendants in a twenty-three

count Indictment. Indictment, ECF No. 11; *see* FIRST STEP Act Presentence Invest. Report ¶ 1,

ECF No. 475 ("PSR"). Petitioner was charged only with Count One: Conspiracy to Distribute

and Possess with Intent to Distribute 50 Grams or More of Cocaine Base, Cocaine, and

Marijuana, in violation of 21 U.S.C. § 846, from on or about January 1984 and continuously

thereafter up to and including April 29, 1996. *See* PSR at ¶ 1. On August 26, 1996, Petitioner and

his co-defendants went to trial. *Id.* at ¶ 2. On September 9, 1996, the jury found Petitioner guilty

of Count One. Jury Verdict, ECF No. 131. On January 21, 1997, the Court sentenced Petitioner

1

to life imprisonment. J., ECF No. 161. On February 5, 2019, Petitioner filed a *pro se* letter motion seeking relief under the FIRST STEP Act. Pet'r's Letter Mot. FIRST STEP Act, ECF No. 415 ("Pet'r's Letter Mot."). On July 15, 2019, the Court denied the motion. Mem. Op. & Order Deny'g Pet'r's Letter Mot. FIRST STEP Act, ECF No. 448 ("Mem. Op. & Order").

On May 24, 2021, Petitioner filed the instant Motion, requesting "compassionate release and reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(i) due to new law and changes in the circumstances." Pet'r's Mot. at 1. On June 4, 2021, the Court appointed the Federal Public Defender ("FPD") to represent Petitioner in this matter. Order June 4, 2021, ECF No. 474. The Court also directed the FPD, the United States Attorney's Office, and the United States Probation Office to respond. *Id.* On June 7, 2021, the Court received a copy of Petitioner's presentence investigation report. *See* PSR. On July 19, 2021, the Government filed a response in opposition. Resp't's Mem. Opp'n Pet'r's Reinstated Mot. FIRST STEP Act, ECF No. 478 ("Resp't's Mem. Opp'n"). On November 5, 2021, Petitioner responded through counsel. Pet'r's Mem. Supp. Pet'r's Reinstated Mot. FIRST STEP Act, ECF No. 482 ("Pet'r's Mem. Supp."). In his response through counsel, Petitioner argues there are three mechanisms through which the Court may evaluate his Motion: (1) a motion for relief under § 404(b) of the FIRST STEP Act; (2) a motion for reconsideration under Federal Rule of Civil Procedure 59(e); or (3) a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Pet'r's Mem. Supp. at 1-2, 9.

On November 24, 2021, and February 23, 2022, Petitioner filed motions to file supplemental exhibits in support of his Motion. Pet'r's Mot. Suppl. Evid. Admin. Req. Compass. Release, ECF No. 484 ("Pet'r's Mot. Suppl."); Pet'r's Second Mot. Suppl. Evid. Admin. Req. Compass. Release, ECF No. 486 ("Pet'r's Second Mot. Suppl."). The Court granted both motions. Order Grant'g Pet'r's Mot. Suppl. Evid. Admin. Req. Compass. Release, ECF No. 485;

Order Grant's Pet'r's Second Mot. Suppl. Evid. Admin. Req. Compass. Release, ECF No. 487. Accordingly, this matter is ripe for judicial determination.

## II.   LEGAL STANDARD

### A. § 404(b) of the FIRST STEP Act

When a court imposes a sentence of imprisonment, that is considered a final judgment on the matter. 18 U.S.C. § 3582(b). It is well established that "[t]he law closely guards the finality of criminal sentences against judicial 'change of heart.'" *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) (citing *United States v. Layman*, 116 F.3d 105, 109 (4th Cir. 1997)). A "court may not modify a term of imprisonment once it has been imposed" except in limited circumstances, including "to the extent otherwise expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B). The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has held that motions under the FIRST STEP Act "fall under § 3582(c)(1)(B)," constituting "a distinct exception to finality." *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020).

Before 2010, federal drug statutes "imposed upon an offender who dealt in powder cocaine the same sentence it imposed upon an offender who dealt in one one-hundredth that amount of crack cocaine." *Dorsey v. United States*, 567 U.S. 260, 263 (2012). The 100-to-1 crack-to-powder cocaine mandatory minimum disparity inflicted disproportionate and unjust effects on Black offenders. *See Kimbrough v. United States*, 552 U.S. 85, 98 (2007). Congress eventually passed the Fair Sentencing Act of 2010, which reduced the crack-to-powder cocaine disparity from 100-to-1 to 18-to-1. *See* Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat 2372 (2010) ("Fair Sentencing Act" or "FSA"). Specifically, Section 2 of the FSA raised the quantity of crack cocaine required to trigger a 10-year mandatory minimum from 50 grams to 280 grams, and raised the quantity required to trigger a 5-year mandatory minimum from 5

grams to 28 grams. *Id.* Section 3 eliminated mandatory minimum sentences for simple possession convictions. *Id.* The FIRST STEP Act of 2018, in part, made these sections retroactive, thereby allowing incarcerated individuals sentenced before the passage of the FSA to petition the sentencing court "to bring [their] pre-2010 sentences 'in line' with post-2010 sentences." *Chambers*, 956 F.3d at 670 (quoting Fact Sheet, Senate Comm. on the Judiciary, The First Step Act of 2018 (S.3649) – as Introduced (Nov. 15, 2018)); *see also* FIRST STEP Act at § 404, 132 Stat. at 52222. When evaluating such a motion, the court undertakes two overarching inquiries: first, the court must determine whether the sentence is eligible for review; and, if so, the court must then conduct a complete review on the merits. *See United States v. Lancaster,* 997 F.3d 171, 174 (4th Cir. 2021).

      1. <u>Sentence Eligibility Determination</u>

"[A] district court presented with a First Step Act motion to reduce a sentence must first determine whether the sentence qualifies for reduction – i.e., whether it is 'eligible' for consideration 'on the merits.'" *Lancaster*, 997 F.3d at 174 (quoting *United States v. Gravatt*, 953 F.3d 258, 262 (4th Cir. 2020)). A sentence is eligible for review if it meets three explicit criteria set forth in the FIRST STEP Act. *Id.* First, the sentence sought to be reduced must be for a "covered offense," meaning "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." FIRST STEP Act at § 404(a), 132 Stat. at 5222. Second, the motion for reduction must be addressed to the court that imposed the relevant sentence. *See id.* at § 404(b), 132 Stat. at 5222; *see also Lancaster*, 997 F.3d at 174. Third, the sentence must not have been "previously imposed or previously reduced" pursuant to the FSA, and the petitioner must not have previously filed a motion under § 404 that was "denied after a complete review of the

4

motion on the merits." *Id.* at § 404(c), 132 Stat. at 5222.

2. Complete Review on the Merits

If a sentence qualifies for review on the merits, a district court then has discretion to decide whether to impose a reduced sentence "as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." *Id.* at § 404(b), 132 Stat. at 5222 (internal citation omitted). The district court's discretion to grant such relief is broad. *See id.* at § 404(c), 132 Stat. at 5222 ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."). Albeit broad, the Fourth Circuit has mandated several steps district courts must take to ensure that the evaluation of the merits is "procedurally and substantively reasonable." *United States v. Collington*, 995 F.3d 347, 358 (4th Cir. 2021).

First, in retroactively applying the FSA, the court must determine the new statutory range set by any amended statutory minimums and maximums. *See id.* at 357 ("[T]he district court's overall sentencing authority is constrained by the retroactively applicable statutory maximums [and minimums] . . . such that the district court abuse[s] its discretion in letting stand a sentence that was made illegal under the Fair Sentencing Act."); *see also Welch v. United States*, 578 U.S. 120, 134 (2016) ("[A] court lacks the power to exact a penalty that has not been authorized by any valid criminal statute."). Second, a district court must recalculate the Sentencing Guidelines range by correcting original Guidelines errors and applying intervening case law made retroactive to the original sentence. *Chambers*, 956 F.3d at 670; *Collington*, 995 F.3d at 355. Third and finally, the court must reconsider the 18 U.S.C. § 3553(a) factors. *Collington*, 995 F.3d at 355. In so doing, courts are able "to more comprehensively shape sentencing decisions and even *depart downward* from the new Guidelines range." *Id.* (emphasis in original). Indeed, in accordance with 18 U.S.C. § 3661, courts may also consider post-sentencing conduct. *Chambers*,

956 at 674-75 ("There are generally no limitations on the types of character and background information a court may consider for sentencing purposes."); *see also Pepper v. United States*, 562 U.S. 476, 491 (2011) ("A categorical bar on the consideration of postsentencing rehabilitation evidence would directly contravene Congress' expressed intent in § 3661.").

"Ultimately, the First Step Act contemplates a robust resentencing analysis, albeit not a plenary resentencing hearing." *Collington*, 995 F.3d at 358. "Rather, the scope of the analysis is defined by the gaps left from the original sentencing to enable the court to determine what sentence it would have imposed under the Fair Sentencing Act in light of intervening circumstances." *Lancaster*, 997 F.3d at 175. Thus, if "the court determines that the sentence would not be reduced, then no relief under the First Step Act is indicated." *Id.*

## B. Motion for Reconsideration

Federal Rule of Civil Procedure 59(e) allows a party to file a motion to alter or amend a judgment no later than twenty-eight days after the entry of the judgment. *See* FED. R. CIV. P. 59(e) (2009). Although Rule 59(e) motions for reconsideration are disfavored, the Fourth Circuit recognizes three limited grounds for a district court's grant of a motion under this rule: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available earlier; or (3) to correct a clear error of law or prevent manifest injustice. *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993); *see also Pendergrass v. United States*, 2001 U.S. Dist. LEXIS 23933, at *1-2 (D.S.C. 2001). The Fourth Circuit has emphasized that mere disagreement with the court's ruling does not warrant a Rule 59(e) motion. *Hutchinson*, 994 F.2d at 1081 (citing *Atkins v. Marathon LeTorneau Co.*, 130 F.R.D. 625, 626 (S.D. Miss. 1990)). Rule 59(e) motions exist for the purpose of allowing "the court to reevaluate the basis for its decision." *Keyes v. Nat'l R.R. Passenger Corp.*, 766 F. Supp. 277, 280 (E.D. Pa. 1991).

**C. Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)**

    1. <u>The Threshold Requirement</u>

A petitioner may bring a motion to modify their sentence after they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [petitioner]'s behalf or the lapse of 30 days from the receipt of such a request by the warden of the [petitioner]'s facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release has two options after requesting that the BOP bring a motion on their behalf: (1) exhaust their administrative remedies; or (2) wait 30 days from the date of their initial request to the BOP. *United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) ("§ 3582(c)(1)(A) outlines two routes – one of which does not require exhaustion of administrative remedies.").

In other words, a petitioner may satisfy the threshold requirement if they "request[] the Bureau of Prisons to bring a motion on their behalf and *either* fully exhaust[] all administrative rights to appeal the Bureau's decision *or* wait[] 30 days from the date of their initial request to file a motion in the district court." *Id.* (emphasis in original). Thus, a petitioner who made a request to the BOP at least 30 days prior may seek compassionate release with the district court whether the BOP has ruled on the request or not. *Id.* (holding petitioner satisfied the threshold requirement by filing his compassionate release motion 149 days after submitting a request to the warden, which the warden denied) (citing *United States v. Garrett*, 15 F.4th 335, 338 (5th Cir. 2021); *United States v. Harris*, 973 F.3d 170, 171 (3rd Cir. 2020); and *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020)). Moreover, the threshold requirement is a non-jurisdictional claim-processing rule, and thus may be waived or forfeited if not timely raised. *Id.* at 129-30 (collecting cases from sister circuits holding the same).

2.  The Compassionate Release Standard

As amended by the FIRST STEP Act, a court may modify a term of imprisonment by motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. §1B1.13, Application Note 1. Before the FIRST STEP Act was passed, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. §1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

U.S.S.G. §1B1.13 is now outdated, however, following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, U.S.S.G. §1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020); *see also United States v. Lisi*, 440 F. Supp. 3d 246, 250 (S.D.N.Y. 2020), *reconsideration denied*, No. 15 CR. 457 (KPF), 2020 WL 1331955 (S.D.N.Y. Mar. 23, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release . . . [but §1B1.13's policy statement] remain[s] as helpful guidance to

8

courts."); *United States v. Fox*, 2019 WL 3046086, at \*3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive."). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. §1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

## III.   DISCUSSION

Petitioner titled his *pro se* Motion as a "Reinstated Motion to Reduce Sentence Pursuant to the First Step Act of 2018." Pet'r's Mot. at 1. While his introduction only grounds his claims in 18 U.S.C. § 3582(c)(1)(A)(i), Petitioner also argues he is entitled to relief under § 404(b) of the FIRST STEP Act. *Id.* at 19-23. Through counsel, Petitioner argues there are three mechanisms through which the Court may evaluate his Motion: (1) a motion for relief under § 404(b) of the FIRST STEP Act; (2) a motion for reconsideration under Federal Rule of Civil Procedure 59(e); or (3) a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Pet'r's Mem. Supp. at 1-2, 9. Accordingly, the Court discusses each basis in turn.

### A. § 404(b) of the FIRST STEP Act

#### 1. Sentence Eligibility Determination

Petitioner may bring a motion to the court that sentenced him to reduce his sentence under the FIRST STEP Act if he seeks to reduce his sentence for a "covered offense," the sentence was not previously imposed or reduced in accordance with the FSA, and he has not filed a previous motion under § 404 that was "denied after a complete review of the motion on the merits." *See* FIRST STEP Act at §§ 404(a)-(c), 132 Stat. at 5222.

It is undisputed that Petitioner meets the first two eligibility criteria. First, Petitioner seeks to reduce his sentence for a "covered offense," namely, Conspiracy to Distribute and Possess with Intent to Distribute 50 Grams or More of Cocaine Base, Cocaine, and Marijuana, in violation of 21 U.S.C. § 846. *See Gravatt*, 953 F.3d at 262-64 (finding petitioner convicted under 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), (b)(1)(A)(iii), and 846 was sentenced to a "covered offense" where he was charged with conspiring to distribute both powder cocaine and crack cocaine, even though the FSA only modified his conviction as to crack cocaine). Petitioner also committed the instant offense in the 1980s and 1990s. PSR at ¶ 111. Second, this Court sentenced him on January 21, 1997. *See* J. Third, however, although Petitioner's sentence was not previously imposed nor reduced in accordance with the FSA, Petitioner did previously file a motion under § 404(b) of the FIRST STEP Act to reduce his sentence. *See* Pet'r's Letter Mot. This Court denied his motion. *See* Mem. Op. & Order. Petitioner argues, however, that this denial did not follow a "complete review of the merits," thereby rendering § 404(c)'s successive motions limitation inapplicable. Pet'r's Mem. Supp. at 1, 5-9.

The Court finds that it was unable to conduct a "complete review of the motion on the merits" because the Fourth Circuit had not yet defined the scope of the merits inquiry at the time the Court issued its original Memorandum Opinion and Order. FIRST STEP Act at § 404(c), 132 Stat. at 5222. Immediately after the enactment of the FIRST STEP Act, "district courts [were] being asked to shape what a resentencing under the First Step Act look[ed] like" "[i]n the context of a new statute, and with little guidance." *Chambers*, 956 F.3d at 671. Indeed, Fourth Circuit jurisprudence on this issue was not developed until after this Court issued its original decision in this case. *See United States v. Wirsing*, 943 F.3d 175 (4th Cir. 2019) (evaluating, as issues of first impression, the proper statutory vehicle for a FIRST STEP Act motion and the definition of a

10

"covered offense"). The Fourth Circuit recently clarified and established the proper contours of a merits inquiry under the FIRST STEP Act in *Chambers*, *Collington*, and *Lancaster*. 956 F.3d at 667; 995 F.3d at 347; 997 F.3d at 171.

Without the benefit of these decisions at the time of the Court's original decision, it could not have conducted the requisite merits review. *See, e.g.*, *United States v. Braxton*, 858 F. App'x 677, 679 (4th Cir. 2021) ("Because the district court did not have the benefit of our decisions in *Chambers*, *Collington*, and *Lancaster*, we vacate the district court's order and remand for reconsideration."). The Government argues that § 404(c) bars Petitioner's instant Motion because Petitioner's previous motion was "fully heard and denied on its merits." Resp't's Mem. Opp'n at 6. Yet, the Government fails to address the meaning of a review "on the merits" as recent Fourth Circuit jurisprudence has defined it. While the Court provided the Government and Petitioner the opportunity to brief their arguments, and the Court evaluated those arguments and issued a decision, the Court nonetheless was unable to engage *completely* in the merits analysis that the Fourth Circuit now requires. In other words, although the Court may have evaluated Petitioner's letter motion "on the merits," it was unable to conduct a "*complete* review . . . on the merits" as it is now understood under Fourth Circuit precedent, which is binding on this Court. FIRST STEP Act at § 404(c), 132 Stat. at 1522 (emphasis added). Accordingly, the Court finds that § 404(c)'s successive motion limitation is inapplicable to Petitioner's instant Motion.

### 2. Complete Review on the Merits

If a sentence qualifies for review on the merits, a district court then has discretion to decide whether to impose a reduced sentence "as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." FIRST STEP Act at § 404(b), 132 Stat. at 5222 (internal citation omitted).

*a.  Retroactive Statutory Penalty Range*

First, the court must determine the new statutory range for 21 U.S.C. § 846 pursuant to any amendments from sections 2 or 3 of the FSA. *See Collington*, 995 F.3d at 357. In order to do so, the Court must look to the applicable penalty provisions for Petitioner's covered offense. *See Gravatt*, 953 F.3d at 263 ("Conspiracy under § 846 does not proscribe the possession or distribution of particular drugs by itself but rather must be charged in conjunction with other statutory provisions."). Petitioner was convicted of Conspiracy to Distribute and Possess with Intent to Distribute 50 Grams or More of Cocaine Base, Cocaine, and Marijuana, in violation of 21 U.S.C. § 846. *See* Indictment. At the time Petitioner was indicted, the penalty provisions for this conspiracy included violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii). *See* 21 U.S.C.A. § 841 (1994) (West) (§ 841(b)(1)(A)(iii) addressed penalties for a violation involving "50 grams or more of a mixture or substance described in clause (ii) which contains cocaine base"). If Petitioner had been indicted after the passage of the FSA, Petitioner would have been subject to the penalty provisions under 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii). *See* 21 U.S.C.A. § 841 (2010) (West) (§ 841(b)(1)(B)(iii) addressed penalties for a violation involving "28 grams or more of a mixture or substance described in clause (ii) which contains cocaine base"). In other words, if the FSA had been "in effect at the time the covered offense was committed," because Petitioner was charged with a conspiracy involving "50 Grams or More" of crack cocaine, cocaine, and marijuana, Petitioner would have been subject to the penalties under § 841(b)(1)(B), not § 841(b)(1)(A). FIRST STEP Act at § 404(b), 132 Stat. at 5222.

The Government's contention that Petitioner would still be subject to the penalties under § 841(b)(1)(A) is inapposite. The Government argues that "[b]ecause [Petitioner] was found responsible for over 280 grams of crack cocaine during the course of the conspiracy, nothing in

the [FSA] would have changed his eligibility to be charged under 21 U.S.C. § 841(b)(1)(A)." Resp't's Mem. Opp'n at 7. As the Government is well aware, the drug weight with which a defendant is ultimately attributed does not determine the charge he initially faces; indeed, an indictment necessarily precedes a finding or proof at trial or sentencing regarding the final amount of drugs involved in an offense. Moreover, the Government's logic is inconsistent with the statute, which allows the court to impose a reduced sentence as if the FSA "were in effect at the time the covered offense was *committed*," not at the time of trial or sentencing. FIRST STEP Act at § 404(b), 132 Stat. at 5222 (emphasis added). At the time Petitioner committed the covered offense, the Government only charged him with a conspiracy involving 50 grams or more. *See* Indictment. Therefore, had the FSA been in effect at that time, Petitioner would have been charged under 21 U.S.C. § 846 with applicable penalties under 21 U.S.C. § 841(b)(1)(B).

Petitioner's argument that he would be subject to the penalties under 21 U.S.C. § 841(b)(1)(C) is similarly inapposite. Petitioner argues that because he was found guilty through a general verdict, "the jury was not required to find a quantity of 50 or more grams of crack—the quantity charged in the indictment—beyond a reasonable doubt." Pet'r's Mem. Supp. at 8-9. In addition to the reasoning that defeats the Government's § 841(b)(1)(A) argument, the significance of a general verdict depends on Petitioner's understanding that, under the FSA, he would be subject to a maximum term of imprisonment of 40 years. *Id.* Yet, Petitioner and the Government both fail to address the impact of Petitioner's criminal history.

At the time of sentencing, under 21 U.S.C. § 841(b)(1)(A), Petitioner faced a statutory mandatory minimum of 10 years' incarceration and a maximum of life imprisonment. *See* 21 U.S.C.A. § 841 (1996) (West). If Petitioner had a prior final conviction for a felony drug offense, he faced a mandatory minimum of 20 years' incarceration and a maximum of life imprisonment.

13

*Id.* If Petitioner had two or more prior final convictions for a felony drug offense, Petitioner faced a mandatory life sentence. *Id.* After the FSA, under 21 U.S.C. § 841(b)(1)(B), Petitioner would have faced a statutory mandatory minimum of 5 years' incarceration and a maximum of 40 years' incarceration. *See* 21 U.S.C.A. § 841 (2010) (West). If Petitioner had a prior final conviction for a felony drug offense, however, he would have faced a mandatory minimum of 10 years' incarceration and a maximum of life imprisonment. *Id.*

According to the PSR, Petitioner had two prior final convictions for felony drug offenses at the time he committed the covered offense. *See* PSR at ¶¶ 125, 126 (In 1994, Petitioner was convicted of two counts of possession with intent to distribute crack cocaine, which were each punishable by 8-10 years and for each he was sentenced to one year, served concurrently). Petitioner's reliance on *Apprendi v. New Jersey*, 530 U.S. 466 (2000) is therefore misplaced. Pet'r's Mem. Supp. at 9. In *Apprendi*, the Supreme Court held that, "*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490 (emphasis added); *see also Alleyne v. United States*, 570 U.S. 99, 111-112 (2013) (holding the *Apprendi* principle "applies with equal force to the facts increasing the mandatory minimum," but declining to disturb the narrow exception for the fact of a prior conviction). Here, it is not the fact of drug weight but rather that of Petitioner's prior convictions that increases the statutory penalty range from 5 years to 40 years, to 10 years to life imprisonment. Therefore, even if the FSA been in effect at the time of Petitioner's covered offense, he would have faced the same statutory penalty range of a mandatory minimum of 10 years' incarceration and a maximum of life imprisonment.

14

### b.  *Recalculated Guidelines Range, Corrections, and Intervening Law*

After retroactively calculating the new statutory penalty range, a district court must recalculate the Sentencing Guidelines range by correcting original Guidelines errors and applying intervening case law made retroactive to the original sentence. *Chambers*, 956 F.3d at 670; *Collington*, 995 F.3d at 355. According to the PSR, Petitioner was attributed with a total offense level of 47 and a criminal history category of VI.[1] PSR at ¶¶ 178-79. Petitioner challenges his Guidelines range in light of intervening case law.[2]

Petitioner first argues his criminal history category should be reduced because he no longer qualifies as a career offender after *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019). Pet'r's Mem. Supp. at 14. Based on his criminal history, Petitioner was attributed with six total criminal history points, which resulted in a criminal history category of III. *See* PSR at 40-41 (Worksheet C). Under U.S.S.G. §4B1.1, at the time, Petitioner was considered a career offender because he was at least 18 years old at the time of the instant offense, the instant offense was a felony controlled substance offense, and Petitioner had at least two prior felony convictions for controlled substance offenses. *Id.* at ¶ 144; *see also* U.S.S.G. §4B1.1 (1995). By virtue of his career offender status, his criminal history category was automatically elevated to VI. PSR at ¶ 144. The 1995 Guidelines defined "controlled substance offense" as "an offense under a federal or state law prohibiting the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."

---

[1] Petitioner's Guidelines range was calculated using the 1995 edition of the U.S. Sentencing Guidelines Manual. *See* PSR at 39.

[2] Petitioner addresses some of these arguments in support of his motion for compassionate release. Because Petitioner offers three lenses through which to view his arguments and the Court is required to consider intervening case law, it will consider these arguments as part of his request for relief under the FIRST STEP Act. *See* Pet'r's Mem. Supp. at 5 ("[Petitioner] requests this relief through the First Step Act of 2018—either under § 404(b) or as a motion for reconsideration of this Court's previous denial—or through 18 U.S.C. § 3582(c)(1)(A) as a motion for compassionate release.").

U.S.S.G. §4B1.2(2) (1995). At the time, Petitioner's covered offense was considered a controlled substance offense. PSR at ¶ 144. Petitioner also had one prior felony conviction for possession of crack cocaine with intent to distribute and one prior felony conviction for possession of cocaine with intent to distribute. *Id.* at ¶¶ 125, 126. Accordingly, the career offender enhancement was properly applied at the time.

In *Norman*, the Fourth Circuit held that conspiracy convictions under 21 U.S.C. § 846 do not qualify as "controlled substance offenses" under U.S.S.G. §4B1.2. 935 F.3d at 237-41; *see also Lancaster*, 997 F.3d at 176 (holding the district court erred in not considering the impact of *Norman* on a petitioner's career offender status when evaluating a FIRST STEP Act motion). Since Petitioner was convicted under 21 U.S.C. § 846, he would not today be considered a career offender because the instant offense would not be a "controlled substance offense." Therefore, in applying intervening case law made retroactive to the original sentence, Petitioner's criminal history category should be III.

Petitioner next argues the facts of his case are meaningfully similar to those in *Collington*. *See* Pet'r's Mem. Supp. at 6 ("The facts of *Collington* are particularly noteworthy."). Contrary to Petitioner's contention, the Court finds the facts of this case are meaningfully different. In *Collington*, the defendant pled guilty in 2009 to possession with intent to distribute five or more grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii). 995 F.3d at 350-51. His offense carried a statutory minimum sentence of 5 years' and a maximum sentence of 40 years' incarceration. *Id.* at 351. Under the FSA reforms, however, Collington was subject to the statutory penalties under 21 U.S.C. § 841(b)(1)(C) because he only pled guilty to a charge involving five or more grams of crack cocaine. *Cf. id.* at n. 1 ("Because Collington's indictment specified his responsibility for five or more grams of cocaine, it alleged only

sufficient facts to trigger the 'fallback' penalty range of § 841(b)(1)(C)."). His offense, when retroactively calculated, thus carried a statutory maximum of 20 years' incarceration. *Id.* at 351. Collington was held responsible for roughly 5,500 grams of crack cocaine and 2,000 grams of powder cocaine and was attributed with a cross-reference for first degree murder. *Id.* at 351. Although Petitioner was ultimately attributed with only 496 grams of crack cocaine and similarly attributed with a first-degree murder cross-reference, his offense falls under a different statute with different statutory penalties. *See* PSR at 39. Moreover, the court in *Collington* does not even mention the defendant's criminal history, if any, and how that impacted his penalties under the relevant statute and the Guidelines.

Finally, Petitioner argues the Court should not apply the cross-reference to first degree murder under U.S.S.G. §2A1.1 when calculating his offense level. Pet'r's Mem. Supp. at 19-20. The Probation Office calculated Petitioner's offense level under U.S.S.G. §2D1.1, which governed conspiracy offenses involving drugs. PSR at 39 (Worksheet A). Petitioner was initially attributed with a total of 617 grams of crack cocaine, which resulted in a base offense level of 36. *Id.*; *see also* U.S.S.G. §2D1.1(c)(2) (Base Offense Level is 36 when the drug weight is "[a]t least 500 G but less than 1.5 KG of Cocaine Base"). At sentencing, however, the Court found that Petitioner's total drug weight was actually 496 grams, resulting in a corrected base offense level of 34.[3] PSR at 38 (Findings of Fact); *see also* U.S.S.G. §2D1.1(c)(3) (Base Offense Level is 34 when the drug weight is "[a]t least 150 G but less than 500 G of Cocaine Base"). Petitioner was attributed with a two-level enhancement for possessing a dangerous weapon and a cross-reference for first degree murder pursuant to U.S.S.G. §§ 2D1.1(d) and 2A1.1. *Id.* at 39. §2D1.1(d) states: "If a victim was killed under circumstances that would constitute murder under

---

[3] The Court notes the PSR incorrectly states Petitioner was attributed with 496.3 kilograms. PSR at 38. The sentencing hearing transcript confirms that the Court ultimately found Petitioner was attributed with 496 grams. *See* Sent'g Hr'g Tr. 106:01-12, ECF No. 169.

17

18 U.S.C. § 1111 . . . apply §2A1.1 (First Degree Murder)." When describing Petitioner's role in the offense, the Probation Officer noted that, "[Petitioner] ordered the killing of Leroy Lee." PSR at ¶ 111. Under §2A1.1(a), first degree murder results in an automatic base offense level of 43. *See* U.S.S.G. §2A1.1(a) (1995). Accordingly, the Probation Office increased Petitioner's base offense level to 43. PSR at 39. The Court overruled Petitioner's objection to the cross-reference, finding "there was sufficient evidence to prove that [Petitioner] directed the killing of Leroy Lee." *Id.* at 37. The Court also found that "there was an abundance of evidence which proved that [Petitioner] was the leader in the conspiracy," which therefore affirmed the Probation Office's four-level enhancement for Petitioner's role in the offense. *Id.* Thus, Petitioner had a total offense level of 47.

Petitioner argues that "[i]t is not clear that the Court found all the aggravating factors it relied on at sentencing by a preponderance of the evidence."[4] Pet'r's Mem. Supp. at 20. Petitioner contends well-settled law dictates "that a sentencing court may not consider acquitted or uncharged conduct unless that conduct is proven by a preponderance of evidence and supported by findings of fact." *Id.* (citing *United States v. Booker*, 543 U.S. 220, 226 (2005); *United States v. Watts*, 519 U.S. 148, 157 (1997) (per curiam); *United States v. Grubbs*, 585 F.3d 793, 799 (4th Cir. 2009); and *United States v. Benkahla*, 530 F.3d 300, 312 (4th Cir. 2008)). At sentencing, however, the Court heard testimony from witnesses and argument to support the cross-reference, and ultimately provided a thorough explanation of the sources it relied on in supporting its application. *See* Sent'g Hr'g Tr. at 99:09-100:11 (summarizing the evidence received to support the cross-reference). Specifically, the Court relied on testimony from several

---

[4] Although Petitioner seemingly disputes "all [of] the aggravating factors" the Court relied on at sentencing, he only mentions the cross-reference to first degree murder specifically. Pet'r's Mem. Supp. at 19-20. Because the Court is not conducting a plenary resentencing, it will therefore focus on the cross-reference. *See Collington*, 995 F.3d at 358.

witnesses at trial and during the sentencing hearing itself, indicating that Petitioner supplied drugs to Leroy Lee, and Leroy's drug abuse and failure to pay "caus[ed] such a problem that [Leroy's] supplier wanted him wiped out or killed." *Id.* at 99:17-18. Moreover, the Court relied on testimony that Scott Lee, Leroy's brother, gave Petitioner a firearm, and that he would not have done so had he known his brother would have been shot. *Id.* at 99:20-100:01. The Court also adopted the findings in the presentence report and considered other testimony indicating the existence of the firearm, although it was never recovered. *Id.* at 100:04-11. The Court ultimately concluded that there were "adequate factual bases" to support the cross-reference. *Id.* at 100:09-11. The Court also reiterated this conclusion when ruling on other objections, finding the "testimony [of Scott Lee] is sufficient to conclude or lead the court to believe that this defendant was involved in the killing of Leroy Lee." *Id.* at 102:19-21. The Court therefore found a supporting factual basis to support the cross-reference by a preponderance of the evidence.

Accordingly, Petitioner's offense level remains 47 and his corrected criminal history category is III, which results in an advisory Guidelines range of life. *Booker*, 543 U.S. at 226.

### c.   18 U.S.C. § 3553(a) Factors

Third and finally, the Court must reconsider the 18 U.S.C. § 3553(a) factors. *Chambers*, 956 F.3d at 670; *Collington*, 995 F.3d at 355; *Lancaster*, 997 F.3d at 175. In so doing, the Court may depart downward from the new Guidelines range and consider post-sentencing conduct. *Collington*, 995 F.3d at 355; *Chambers*, 956 at 674-75; *Pepper*, 562 U.S. at 491.

The nature and circumstances of the offense are indisputably serious. *See* 18 U.S.C. § 3553(a)(1). Petitioner was convicted of participating in part of a twelve-year conspiracy to distribute and possess with intent to distribute cocaine base, cocaine, and marijuana. PSR at ¶ 2. According to the PSR, Petitioner was involved from November 1987 until he was arrested on

July 14, 1992. *Id.* at ¶ 111. He was considered a leader in the conspiracy because he exercised decision-making authority, recruited individuals, and claimed the right to a larger share of the fruits of the crime. *Id.* Specifically, Petitioner recruited individuals, including two women, to distribute cocaine and crack cocaine for him. *Id.* He traveled to New York to obtain large quantities of cocaine and crack cocaine to distribute in Virginia and participated in the packaging and cooking of the cocaine. *Id.* He also supplied large quantities of crack to co-defendants. *Id.* During the course of the conspiracy, he distributed cocaine and crack cocaine in North Carolina as well. *Id.* Moreover, Petitioner ordered the killing of Leroy Lee over a drug debt and admitted to authorities that he possessed a 9mm handgun while he distributed cocaine. *Id.* Petitioner was ultimately attributed with 496 grams of crack cocaine. *Id.* at 39.

As to his history and characteristics, the Court notes that Petitioner was born in Jamaica and came to the United States at some point in the late 1980s. PSR at ¶ 147. At the time of sentencing, Petitioner had at least two minor children, some history of drug use dating back to 1989, and a high school education. *Id.* at ¶¶ 152-63. His employment history consisted of intermittent and part-time work in the service industry before 1988, and no employment from 1988 until his arrest in 1994. *Id.* at ¶¶ 164-67. Petitioner's criminal history is significant, including several convictions for possession and possession with intent to distribute cocaine and crack cocaine, two convictions for possession of firearm and ammunition without a license, and one conviction for accessory to murder after the fact. *Id.* at ¶¶ 124-27.

Petitioner is currently 53 years old and was 28 years old when he was sentenced to life imprisonment. [5] PSR at 2. To date, Petitioner has served nearly 26 years of his sentence, meaning he has spent almost half of his life incarcerated *See* PSR at 1 ("Detained without bond since May

---

[5] The Court notes that Petitioner's exact birth date is unknown. *See* PSR at 2 (listing six different dates of birth). Since it is undisputed that Petitioner was 28 years old at the time of sentencing, the Court uses that as the metric to determine his age at the time of other relevant events.

15, 1996"). Based on this information, the Court notes that Petitioner was around 19 years old when he became involved in the conspiracy and was around 20 years old at the time of his involvement in Leroy Lee's death. *See* PSR at ¶¶ 30, 111 (Petitioner became involved in the instant offense in November 1987 and Leroy Lee was killed on October 15, 1988).

In the first ten years after sentencing, Petitioner developed a lengthy and significant disciplinary record. *See* Resp't's Mem. Opp'n at Ex. 4. Petitioner incurred five sanctions in 1997, four infractions in 1998, two infractions in 2002, one infraction in 2003, three infractions in 2004, and one infraction in 2006. *Id.* To his credit, however, Petitioner has not incurred any infractions in almost 16 years. Petitioner also obtained his G.E.D. in 1999, worked as a law clerk in the prison library from 1997 to 2004, and has taken advantage of various educational and vocational programs while incarcerated. *See* Pet'r's Mot. at Ex. 1, at 1-4, 11. Additionally, Petitioner has maintained strong familial relationships and a support system. *See id.* at Ex. 1. Moreover, if released and not deported, Petitioner plans to reside with his younger sister in Florida. *Id.* at Ex. 1, at 5. His siter also indicated that she and other family members are committed to helping Petitioner reintegrate into society and find employment. *Id.* If deported, Petitioner plans to reside with his mother in Jamaica and take care of her. *Id.* at Ex. 1, at 6-7. His mother has also indicated her commitment to supporting Petitioner if released. *Id.* The Court finds that Petitioner's rehabilitation, age, and support system indicate that he is unlikely to recidivate if released. *See* 18 U.S.C. § 3553(a)(2)(B)-(C). Moreover, as Petitioner notes, he would still be subject to five years of supervision. *See* J.

The need to avoid unwarranted sentencing disparities is especially pertinent to this case. *See* 18 U.S.C. § 3553(a)(6). First, the Court notes that two of Petitioner's co-defendants have received reduced sentences. Co-defendant Ernest Sterling Wright, who was found guilty of the

same offense as Petitioner and three counts of distribution and possession with intent to distribute crack cocaine, was initially sentenced to life as well. Wright J., ECF No. 163. Wright had a total offense level of 44 and a criminal history category of IV. *See* Wright Cocaine Base Retroact. Presentence Invest. Report 41-44, ECF No. 322. Wright was similarly attributed with a two-level increase for possession of a dangerous weapon and a four-level enhancement for his role in the offense, but he was not attributed with a cross-reference for first degree murder. *Id.* at 41. On February 10, 2012, this Court reduced Wright's sentence to 360 months' imprisonment based on the amendments to the Fair Sentencing Act. Order Reduc'g Sentence, ECF No. 334.

Co-defendant Scott William Lee, who was found guilty of the same offense as Petitioner and two counts of distribution and possession with intent to distribute cocaine and cocaine base, was similarly initially sentenced to life imprisonment. Lee J., ECF No. 165. Lee had a total offense level of 43 and a criminal history category of IV. *See* Lee FIRST STEP Act Presentence Invest. Report 35-39, ECF No. 417. Lee was similarly attributed with a two-level increase for possession of a firearm and a cross-reference for first degree murder, although he did not receive a four-level enhancement for his role in the offense. *Id.* at 35. On August 9, 2019, this Court reduced Lee's sentence to time served pursuant to § 404 of the FIRST STEP Act based on his low-level role in the offense, his relatively non-violent criminal history, the retroactive statutory maximum, and his post-sentencing conduct.[6] *See* Am. Mem. Op. & Order Grant'g Mot. Reduce Sentence, ECF No. 456.

Petitioner's last co-defendant, Larry Eugene Reed, was found guilty on sixteen counts of the Indictment. Jury Verdict, ECF No. 133. Specifically, Reed was found guilty of the same

---

[6] Unlike Petitioner, Lee did not have the requisite criminal history to trigger 10-years-to-life-imprisonment statutory range when retroactively applying the FSA. *See* Lee FIRST STEP Act Presentence Invest. Report at 19-22. Accordingly, while Lee's sentence under § 404(b) subjected him to a statutory maximum of 40 years' imprisonment, Petitioner's statutory maximum remains life under the FSA.

offense as Petitioner, thirteen counts of drug distribution charges, and two counts of using or carrying a firearm while trafficking illegal drugs. *See* Reed FIRST STEP Act Presentence Invest. Report 2-3, ECF No. 443. Reed had a total offense level of 46 and a criminal history category of III. *Id.* at 46-52. He was attributed with a two-level increase for possession of a firearm, a cross-reference for a victim killed, a cross-reference to first degree murder, and a three-level enhancement for his role in the offense. *Id.* at 46. Notably, Reed was responsible for the most egregious conduct of all four defendants: two murders, shooting another individual, and a shootout. *Id.* at ¶ 115. Reed's criminal history also includes multiple violent convictions. *Id.* at ¶¶ 122, 124-25. Accordingly, this Court denied his motion for relief under the FIRST STEP Act on September 10, 2019. Mem. Op. & Order Deny'g Mot. Reduce Sentence, ECF No. 460. The Court therefore finds that the seriousness of Petitioner's conduct falls below Reed, but above Wright and Lee.

### d. Disposition

For the foregoing reasons, the Court finds it appropriate to reduce Petitioner's sentence. *See Collington*, 995 F.3d at 355 ("[T]he First Step Act tasks district courts with making a holistic resentencing determination as to whether the original sentence remains appropriate in light of the Fair Sentencing Act's reforms."). Specifically, the Court considers Petitioner's youth at the time of the covered offense, single-count conviction, lack of career offender status in light of intervening case law, post-sentencing rehabilitation, age, support system, and the need to avoid sentencing disparities as warranting a reduction in sentence. Accordingly, Petitioner's Reinstated Motion to Reduce Sentence Pursuant to the FIRST STEP Act is **GRANTED.**

### B. Motion for Reconsideration

Petitioner argues, in the alternative, that the Court treat his Motion as a motion for reconsideration under Federal Rule of Civil Procedure 59(e). Pet'r's Mem. Supp. at 9. Rule 59(e) specifically requires, however, that such a motion "must be filed no later than 28 days after the entry of the judgment." FED. R. CIV. P. 59(e). The Court filed its original Memorandum Opinion and Order on July 15, 2019. Mem. Op. & Order. Petitioner filed a notice of appeal on July 26, 2019. Notice Appeal, ECF No. 451. On October 30, 2019, the Fourth Circuit dismissed Petitioner's appeal for failure to prosecute. 4th Cir. Order Oct. 30, 2019, ECF No. 466. The Fourth Circuit filed a formal mandate for that order the same day. R. 45 Mandate Oct. 30, 2019, ECF No. 467. Petitioner filed the instant Motion on May 24, 2021. Pet'r's Mot. Even if the Court gave Petitioner the benefit of considering the entry of judgment to be the date of the Fourth Circuit mandate, he still filed the instant Motion well over twenty-eight days later. Accordingly, the Court declines to consider the instant Motion through this mechanism.

### C. Motion for Compassionate Release

Alternatively, Petitioner moves for a reduced sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). *See* Pet'r's Mot.; Pet'r's Mem. Supp. at 11.

#### 1.  The Threshold Requirement

The Government contends Petitioner has failed to exhaust his administrative remedies. Resp't's Mem. Opp'n at 8; *see Muhammad*, 16 F.4th at 129-30 (the threshold requirement is a non-jurisdictional claim-processing rule that may be waived or forfeited if not timely raised). A petitioner seeking compassionate release has two options *after* requesting that the BOP bring a motion on their behalf: (1) exhaust their administrative remedies; or (2) wait 30 days from the date of their initial request to the BOP. *See Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) ("§

3582(c)(1)(A) outlines two routes – one of which does not require exhaustion of administrative remedies."). Although Petitioner did not need to exhaust his administrative remedies, as the Government contends, he was required to file a request with the BOP before bringing a motion before this Court, which he did not. *See* Resp't's Mem. Opp'n at Ex. 2. Rather, Petitioner filed the instant Motion with the Court on May 24, 2021, and did not file a request for compassionate release with the BOP until November 16, 2021. Pet'r's Mot. Suppl. at Ex. 1. On February 11, 2022, the BOP denied Petitioner's request. Pet'r's Second Mot. Suppl. at Ex. 1.

Petitioner argues the Court should waive the threshold requirement because his request to the BOP implicates three exceptions. Pet'r's Mem. Supp. at 12. The threshold requirement – also known as the "exhaustion requirement" – "may be waived under the following circumstances: (1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice." *Poulios v. United States*, No. 2:09-cr-109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020) (citing *United States v. Zukerman*, 451 F. Supp. 3d 329, 332-33 (S.D.N.Y. 2020) (applying the Second Circuit and Supreme Court's exceptions to administrative exhaustion requirements to compassionate release motions)).

Petitioner requested compassionate release to the BOP on the basis that his sentence of life imprisonment is now unlawful after the FIRST STEP Act and the Fair Sentencing Act, which is consistent with his Motion before the Court. Pet'r's Mot. Suppl. at Ex. 1. The BOP has outlined the types of circumstances it considers when evaluating such requests. *See* U.S. Dep't of Justice, Fed. Bureau of Prisons, Program Statement No. 5050.50: Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and

4205(g) (Jan. 17, 2019)[7] ("BOP Program Statement"); *see also* 28 C.F.R. § 571.60. Specifically, the BOP considers requests based on medical circumstances, elderly status, death or incapacitation of a family member's caregiver, and incapacitation of a spouse or registered partner. BOP Program Statement at 4-12. The BOP does not consider intervening law as a basis for review. Indeed, in denying Petitioner's request for relief, the BOP explicitly reasoned: "Your request does not meet any of those criteria so your request is denied. Sentencing procedures that you feel are in error must be submitted to the district court." Pet'r's Second Mot. Suppl. at Ex. 1. The Court therefore finds that Petitioner's request for relief to the BOP would have been futile regardless of when he submitted it. Accordingly, the Court waives the threshold requirement.

### 2. The Compassionate Release Standard

After considering the § 3553(a) factors, a court may modify a term of imprisonment under § 3582(c)(1)(A) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Since U.S.S.G. §1B1.13 is inapplicable to compassionate release motions, "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)) (emphasis in original).

The Court relies in part on its discussion of the merits of Petitioner's Motion under § 404(b).[8] In addition, the Court finds that the significant disparity between the mandatory life sentence Petitioner faced at sentencing and the sentence he would receive today after the passage of the FIRST STEP Act constitutes an "extraordinary and compelling" reason to modify his sentence. *McCoy*, 981 F.3d at 285.

In 1997, the Sentencing Guidelines were mandatory and required the Court to impose a

---

[7] *Available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf.
[8] *See supra* Section III.A.2.

life sentence. It is well-settled that the Guidelines are now advisory. *See Booker*, 543 U.S. at 226. Moreover, the amendments that the FIRST STEP Act made to 21 U.S.C. § 841 would constrain Petitioner's sentence to a maximum of 40 years' imprisonment.[9] Specifically, 21 U.S.C. § 841(b)(1)(B) – the penalty provision the Court has established is retroactively applicable and the provision that remains applicable today – proscribes a statutory range of a minimum of 5 years and a maximum of 40 years' imprisonment *unless* an individual "commits such a violation after a prior conviction for a serious drug felony or serious violent felony becomes final." 21 U.S.C.A. § 841(b)(1)(B) (2018) (West). Under the FIRST STEP Act, the definition of "serious drug felony" "incorporates certain controlled-substance offenses . . . and then adds two requirements." *United States v. Skaggs*, 23 F.4th 342, 343 (4th Cir. 2022). Namely, a "serious drug felony" is an offense described in 18 U.S.C. § 924(e)(2) for which "the offender served a term of imprisonment of more than 12 months; and the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense." 21 U.S.C.A. § 802(57)(A)-(B) (2018) (West).

Here, Petitioner was convicted of two state law offenses that qualify as 18 U.S.C. § 924(e)(2) offenses: possession of crack cocaine with intent to distribute and possession with intent to distribute cocaine. PSR at ¶¶ 125-26; *See* 18 U.S.C.A. § 924(e)(2)(A)(ii) (2018) (West) ("[T]he term 'serious drug offense' means . . . an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance."). However, Petitioner only served one year for both offenses. *See* PSR at ¶¶ 125 (Sentence for Possession of Crack Cocaine with Intent to Distribute was "8-10 years, 1 year to

[9] The Court notes that, somewhat paradoxically, the FIRST STEP Act only made retroactive sections 2 and 3 of the Fair Sentencing Act of 2010. *See* FIRST STEP Act at § 404(b), 132 Stat. at 5222. It did not, however, make retroactive its own amendments to 21 U.S.C. §§ 841 and 960. *See id.* at § 401, 132 Stat. at 5220. Accordingly, the Court must evaluate Petitioner's Motion under § 404(b) as if the Fair Sentencing Act – not the FIRST STEP Act itself – were in effect at the time of sentencing.

serve, balance suspended, sentence to run concurrent with sentence imposed on Docket No. 94-197(3)."), 126 (Sentence for Possession with Intent to Distribute Cocaine ("Dkt. # 94-1097(3)") was "8-10 years, 1 year to serve, balance suspended, 5 years probation, $150 drug fee, $50 victim/witness fee, 114 days credit for time served."). Since Petitioner did not serve more than 12 months for these offenses, his prior convictions do not meet the requirement under 21 U.S.C. § 802(57)(A), meaning they do not qualify as "serious drug offenses." Thus, if sentenced today, Petitioner would face a statutory range of a minimum of 5 years and a maximum of 40 years' imprisonment. The Court therefore finds Petitioner's life sentence to be "disproportionate to both the seriousness of the offense and to what Congress now deems appropriate for this kind of conduct." *McCoy*, 981 F.3d at 279 (internal quotations omitted).

The Court finds Petitioner has demonstrated "extraordinary and compelling reasons" to warrant a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Accordingly, Petitioner's Reinstated Motion to Reduce Sentence Pursuant to the FIRST STEP Act is **GRANTED**.

## IV.   CONCLUSION

For the foregoing reasons, Petitioner's Reinstated Motion to Reduce Sentence Pursuant to the FIRST STEP Act is **GRANTED**. The Court now imposes a sentence of **FOUR HUNDRED (400) MONTHS** on Count One. All other provisions of Petitioner's sentence **SHALL** remain unchanged.

The Clerk is **DIRECTED** to send a copy of this Order to Petitioner, the United States Attorney, the Federal Public Defender, and the United States Probation Office.

**IT IS SO ORDERED.**

Newport News, Virginia
April /8 , 2022

Raymond A. Jackson
**United States District Judge**

28